IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13–cv–01745–REB–KMT

CHUN CHEE SENG,

      Plaintiff,

v.

AMERICANA INVESTMENTS, LLC,
MARGARET V. ANDERSON-CLARKE,
ANDERSON-CLARKE LAW,
BRIAN D. WEST, and
WEST LAW GROUP, P.C.,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

      This case comes before the court on "Defendant Americana Investments, LLC's Motion to Dismiss Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)" (Doc. No 16 [Mot. Dismiss], filed September 3, 2013), to which Plaintiff filed his response on October 24, 2013 (Doc. No. 38 [Resp. Mot. Dismiss]) and Defendant Americana ("Americana") filed its reply on November 25, 2013 (Doc. No. 42 [Reply Mot. Dismiss]).[1]

---

[1]The counsel who filed the Motions to Dismiss and replies in support of the Motions on behalf of Defendants Americana, West, and West Law Group withdrew.  (*See* Doc. Nos. 45, 47.) Defendant West then entered his appearance for Defendants Americana and West Law Group (Doc. No. 54) and also represents himself *pro se*.

Also before the court is "Plaintiff's Motion for Partial Summary Judgment Against

Defendant Americana Investments, LLC" and "Brief in Support of Plaintiff's Motion for Partial

Summary Judgment" (Doc. No. 67 [Mot. Summ. J.]; Doc. No. 67-1 [Br.], filed June 6, 2014).

Defendant Americana did not file a response.

These motions are ripe for recommendation and ruling.

## STATEMENT OF THE CASE

This case involves allegations that the defendants violated promises made to Plaintiff in

written contracts, oral statements, and emails, and perpetuated fraud to deprive Plaintiff of a $1

million investment. (*See* Doc. No. 1 [Compl.], filed July 2, 2013.)  Plaintiff is a citizen of

Malysia. (*Id.*, ¶ 1.)  Plaintiff alleges Defendant Americana Investments, LLC is a now-

delinquent Colorado limited liability company (*id.*, ¶ 2), Defendant West is a citizen of Virginia

and an attorney licensed in Virginia (*id.*, ¶ 5), and West Law Group, P.C., is a Virginia

professional corporation (*id.*, ¶ 6).

The Complaint alleges that in late 2010 Defendant Americana used several means to

advertise investment opportunities available to Plaintiff.  (*Id.*, ¶ 14.)  Plaintiff alleges Americana

then reached out to Plaintiff to discuss an investment scheme in which Americana would lease

investors' funds in the market and the "credit instrument" would then be resold by the end of the

week "at a much higher rate." (*Id.*, ¶ 15–19.)  On or around February 1, 2011, Plaintiff

expressed his concern about the security of an investment, but Defendant Americana pacified his

concerns by suggesting the involvement of Defendant Anderson-Clarke, a Canadian barrister,

who would act as a third party escrow agent and ensure the safe custody of Plaintiff's initial

investment.[2]  (*Id.*, ¶¶ 35–37.)  Because Plaintiff believed that Defendant Anderson-Clarke's

involvement legitimized and confirmed the investment opportunity, on February 4, 2011,

Plaintiff executed an Investment Development Cooperation Agreement ("IDCA"), in which he

agreed to invest $1,000,000 ("Initial Investment") with Americana, which would use the Initial

Investment "to establish the suitable lines of credits and/or banking facilities and form a Special

Purpose Investment Vehicle ("SPIV"). . . ."  (*Id.*, ¶¶ 24–25, 38, 41.)  Plaintiff alleges the IDCA

promised that Plaintiff would receive roughly $36,000,000, before taxes and costs, on a monthly

basis in ten-month "investment cycles" or "portfolios" — for a total of roughly $360,000,000

that Defendant Americana would pay Plaintiff.  (*Id.*, ¶ 30.)  On February 9, 2011, Plaintiff,

Defendant Americana, and Defendant Anderson-Clarke entered into an Escrow Agreement that

required, *inter alia*, that Defendant Anderson-Clarke was required to place the Initial Investment

into "secured investments" and to maintain at least $1,000,000 United States Dollars in the

escrow account, less any accrued escrow agent fees.  (*Id.*, ¶ 45.)  On February 14, 2011, Plaintiff

and Defendant Americana amended the Escrow Agreement to require that the Initial Investment

be returned to Plaintiff by either Defendant Americana or Defendant Anderson Clarke within

180 days.  (*Id.*, ¶¶ 48–49.)  On February 25, 2011, Plaintiff wired the Initial investment to

Defendant Anderson-Clarke's account.  (*Id.*, ¶ 50.)

Plaintiff alleges Defendants Americana and Anderson-Clarke breached the terms of the

IDCA by converting the Initial Investment into Canadian dollars.  (*Id.*, ¶¶ 54–58.)  Plaintiff also

---

[2]Defendants Anderson-Clarke and Anderson-Clarke Law are in default.  (*See* Doc. Nos. 77 & 79.)

3

alleges Defendant Anderson-Clarke breached the Escrow Agreement and IDCA by failing to transfer the Initial Investment into "secured investments," failing to form an SPIV, and failing to use the Initial Investment as specified in the Escrow Agreement and IDCA.  (*Id.*, ¶¶ 60–61.) Plaintiff also alleges Defendants Americana and Anderson-Clarke failed to return Plaintiff's Initial Investment within 180 days.  (*Id.*, ¶ 62.)

Plaintiff alleges since April 2011 he has attempted to obtain his Initial Investment and the additional returns owed to him.  (*Id*, ¶ 63.)  Plaintiff, Defendant Americana, and Defendant Anderson-Clarke participated in settlement negotiations in which the West Defendants represented Defendants Americana (*id.*, ¶¶ 70, 100), and the efforts ultimately culminated (after two prior attempts) in the execution of a Third Settlement Agreement on February 1, 2013 (*id.* ¶¶ 100-101, 112).  Plaintiff alleges the Third Settlement Agreement required the return of Plaintiff's Initial Investment within eight days of execution, but Americana breached the Third Settlement Agreement by failing to transfer the funds to Plaintiff.  (*Id.*, ¶¶ 102–03.)

Plaintiff asserts the following claims against Americana:  (1) breach of contract; (2) fraud; (3) unjust enrichment; (4) claims under Section 10(b) of the Securities Exchange Act ("SEA") and 17 C.F.R. § 240.10b-5; and (5) claims under the Colorado Securities Act ("CSA"). (*See* Compl.)

# LEGAL STANDARDS

### A.      Failure to State a Claim Upon Which Relief Can Be Granted

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss

a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6)

(2007). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that

the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally

sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d

1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual

allegations are true and construes them in the light most favorable to the plaintiff." *Hall v.

Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991). "To survive a motion to dismiss, a complaint

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic

Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss,

means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two

prongs of analysis. First, the court identifies "the allegations in the complaint that are not

entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare

assertions, or merely conclusory. *Id*. at 1949–51. Second, the Court considers the factual

allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 1951. If the

allegations state a plausible claim for relief, such claim survives the motion to dismiss.  *Id*. at

1950.

Notwithstanding, the court need not accept conclusory allegations without supporting

factual averments.  *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir.

1998).  "[T]he tenet that a court must accept as true all of the allegations contained in a

complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 129 S. Ct. at 1940.

Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the

elements of a cause of action will not do.'  Nor does the complaint suffice if it tenders 'naked

assertion[s]' devoid of 'further factual enhancement.' "  *Id*. at 1949 (citation omitted).  "Where a

complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of

the line between possibility and plausibility of 'entitlement to relief.' "  *Iqbal*,129 S. Ct. at 1949

(citation omitted).

**B.      *Summary Judgment***

Summary judgment is appropriate if "the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  The moving party bears the initial burden of showing an absence of evidence to support

the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "Once the

moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a

genuine issue for trial on a material matter."  *Concrete Works, Inc. v. City & County of Denver*,

36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325).  The nonmoving party

6

may not rest solely on the allegations in the pleadings, but must instead designate "specific facts

showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P.

56(c).  A disputed fact is "material" if "under the substantive law it is essential to the proper

disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998)

(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A dispute is "genuine" if the

evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.

*Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citing *Anderson*,

477 U.S. at 248).

When ruling on a motion for summary judgment, a court may consider only admissible

evidence. *See Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1209–10 (10th Cir. 2010).  The

factual record and reasonable inferences therefrom are viewed in the light most favorable to the

party opposing summary judgment. *Concrete Works*, 36 F.3d at 1517.  Moreover, because

Plaintiff is proceeding *pro se*, the court, "review[s] his pleadings and other papers liberally and

hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United

States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404

U.S. 519, 520–21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards

than formal pleadings drafted by lawyers").  At the summary judgment stage of litigation, a

plaintiff's version of the facts must find support in the record. *Thomson v. Salt Lake Cnty.*, 584

F.3d 1304, 1312 (10th Cir. 2009).  "When opposing parties tell two different stories, one of

which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court

should not adopt that version of the facts for purposes of ruling on a motion for summary

judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Thomson*, 584 F.3d at 1312.

## ANALYSIS

*A.*     *Motion to Dismiss*

Defendant Americana argues that Plaintiff's claims against it should be dismissed on the

bases that (1) a binding settlement agreement precludes each of Plaintiff's claims other than

breach of the Third Settlement Agreement; (2) Plaintiff failed to plead his Section 10(b) claim

with particularity; (3) Plaintiff's state law claims for registration and sale of securities fails

because there was no relevant offer to sell or sale of a security in Colorado; (4) the Third

Settlement Agreement, IDCA, and Escrow Agreement preclude Plaintiff's claim for unjust

enrichment; (5) Plaintiff failed to plead his fraud claim with the requisite particularity; and (6)

Plaintiff failed properly to plead a breach of contract claim.[3]  (*See* Mot. Dismiss.)

*1.*     *Third Settlement Agreement Does Not Preclude Plaintiff's Other Claims*

Defendant Americana argues that it and Plaintiff are signatories and parties to the Third

Settlement Agreement, which released any and all of the parties' claim regarding the IDCA,

Escrow Agreement, and Second Settlement Agreement.  (Mot. Dismiss at 7.)  Thus, Defendant

Americana argues, every claim except a claim for breach of the Third Settlement Agreement

should be dismissed as precluded by the Third Settlement Agreement.  (*Id.*)

The Third Settlement Agreement states, in relevant part,

---

[3]Defendant Americana does not move to dismiss Plaintiff's breach of contract claim to the extent it relates to the Third Settlement Agreement.  (*See* Mot. Dismiss.)

> Notwithstanding all other provisions in this Agreement, Americana's failure to wire the Returned Investment within the specified time period under this Paragraph 3 is a material breach of this Agreement that unequivocally releases Chun from any promise, forebearance or other obligation forming consideration owed to Americana or otherwise created under this Agreement.  Chun, in his sole discretion, may waive this breach and seek enforcement of this Settlement Agreement.

(Compl., Ex. AC at 2.)[4]

Plaintiff argues that Defendant Americana failed to wire the "Returned Investment" to Plaintiff after the parties executed the Third Settlement Agreement and, thus, the plain meaning of this provision is that Defendant Americana's failure to wire the funds constituted a breach of the Third Settlement Agreement and releases Plaintiff's obligation to release the underlying claims.  (Resp. Mot. Dismiss at 10.)

Defendant Americana argues that Plaintiff ignores the last sentence of the paragraph, which allows Plaintiff to "waive this breach and seek enforcement of this Settlement Agreement."  (Reply Mot. Dismiss at 1.)  Defendant Americana contends that by suing to enforce the Third Settlement Agreement and thereby attempting to enforce the Third Settlement Agreement, Plaintiff has waived the breach, and he also waives any right to assert any fraud or related claims, except his claim for breach of the Third Settlement Agreement.  (*Id.* at 1–2.) However, this argument flies in the face of the plain meaning of the contract, which allows Plaintiff either to waive the breach and seek enforcement of the Third Settlement Agreement <u>or</u>

---

[4]The exhibits referenced in the motion to dismiss are attached to the Complaint.  As such, the court may consider them.  *Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir. 1991) (written documents attached to the complaint are exhibits and are considered part of the complaint for consideration in a rule 12(b)(6) dismissal).

to void the Third Settlement and pursue the underlying claims in the event the defendant failed timely to make the payment.  (Compl., Ex. AC at 2.)

Moreover, Federal Rule of Civil Procedure Rule 8(d)(2) specifically provides:  "A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones.  If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."  Fed. R. Civ. P. 8(d)(2).  Furthermore, "[a] party may state as many separate claims or defenses as it has, regardless of consistency."  Fed. R. Civ. P. 8(d)(3).  Plaintiff here is engaged in alternative pleading.  "[C]ourts have permitted plaintiffs to sue on a contract theory and at the same time alternatively repudiate the agreement and seek recovery on a quantum meruit claim or allege fraud or some other tort theory."  5 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3d § 1283 (2004).

The Tenth Circuit has explained that

claims based on a settlement agreement preclude relief on the underlying settled claims only upon a clear election of remedies in favor of the former, which . . . does not happen automatically at the outset of litigation but requires a more deliberate choice reflected in the decision to take a judgment on the settlement agreement.  That is a party's choice to make, and, as with any litigation decision, it is entirely reasonable to expect the party to accept the attendant risks and benefits of the choice when it is clearly made.

*Boulware v. Baldwin*, 545 F. App'x 725, 730 (10th Cir. 2013).  Thus, Plaintiff properly may plead claims for breach of the Third Settlement Agreement along with his other claims.

In support of its argument that Plaintiff, by electing to enforce the Third Settlement Agreement, has waived any enforcement of the contractual release, Defendant Americana cites *Trimble v. City and County of Denver*, 697 P.2d (Colo. 1985).  In *Trimble*, the plaintiff signed a

10

settlement agreement with the defendant that provided the plaintiff with pecuniary and career

benefits in return for the plaintiff's resignation and his covenant not to sue.  697 P.2d at 723

(overruled by statute on other grounds).  However, at trial, the plaintiff elected to affirm the

settlement agreement and seek recovery for the breach of that agreement.  *Id.*  Therefore, the

Court held that "[h]aving affirmed the settlement contract, [the plaintiff] may not also avoid the

burdens of that contract, including his promise not to sue. . . ."  *Id.*

Plaintiff in this case has not yet elected which remedy he will pursue, and he is not

required to do so at the pleading stage.  Therefore, Defendant Americana's motion to dismiss on

this basis properly is denied.

### 2.      Tenth, Eleventh, and Twelfth Claims for Relief

Defendant moves to dismiss Plaintiff's Tenth Claim for violations of Section 10(b) of the

SEA and 17 C.F.R. § 240.10b-5 because Plaintiff failed to plead the claim with the required

particularity and because it is barred by the statute of limitations.  (Mot. at 8–11.)  Defendant

moves to dismiss Plaintiff's Eleventh and Twelfth Claims (claims asserted under the CSA) on

the same bases.  (*Id.* at 12–13.)  Additionally, Defendant moves to dismiss Plaintiff's Eleventh

and Twelfth Claims because there was no offer to sell in Colorado.  (*Id.* at 12.)

#### a.      Statutes of Limitations

##### ii.      Claims under Section 10(b) of the SEA and Colo. Rev. Stat. § 11-51-301

The statute of limitations for private claims under § 10(b) of the SEA provides that cases

must be brought not later than the earlier of two years after the discovery of the facts constituting

11

the violation or five years after the violation.  28 U.S.C. § 1658(b).  The statute of limitations on

claims brought by persons suing under Colo. Rev. Stat. § 11-51-301 is two years after the

contract of sale.  Colo. Rev. Stat. § 11-51-604(8).

Plaintiff alleges the violations occurred in connection "with the purchase and sale" of the

IDCA—the "contract of sale" at issue—that was executed on February 4, 2011.  (*Id.*, ¶ 41.)

Plaintiff also pleads that by April 2011 he was aware of purported misdeeds regarding the IDCA

and already trying to obtain the return of his $1 million.  (Compl., ¶¶ 60–63.)  Plaintiff's

Complaint was filed on July 2, 2013—more than two years after both the "contract of sale" date

and the date on which Plaintiff was aware of alleged misdeeds, and thus Plaintiff's Tenth and

Eleventh Claims for Relief are time barred.

Plaintiff concedes his Tenth and Eleventh Claims for Relief are time-barred, yet argues

equitable tolling should apply.[5]  (Resp. Mot. to Dismiss at 12–15.)  "State law governs any

tolling of [the statute of limitations] period, except that federal law might also allow additional

equitable tolling in rare circumstances."  *Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th

Cir. 2008) (citations omitted).  Under Colorado law, a statute of limitations may be equitably

tolled where a plaintiff did not timely file his claims because a defendant's wrongful conduct

prevented the plaintiff from doing so or because of "extraordinary circumstances."  *Brodeur v.*

*American Home Assur. Co.*, 169 P.3d 139, 149 (Colo. 2007).  The doctrine of equitable tolling is

not favored and is only applied when all of its elements are clearly shown.  *Olson v. State Farm*

---

[5]Plaintiff also appears to concede that his Twelfth Claim for Relief, asserted under Colo.
Rev. Stat. § 11-501-501, is time barred.  (*Id.* at 12)  However, he is incorrect, as explained *infra*.

*Mut. Auto. Ins. Co.*, 174 P.3d 849, 858 (Colo. App.2007) (citing *Dean Witter Reynolds, Inc. v. Hartman*, 911 P.2d 1094, 1096–97 (Colo. 1996)).  The elements of equitable tolling are:

> (1) the party to be estopped must know the relevant facts; (2) the party to be estopped must intend that his or her conduct be acted on, or act in a manner that the party asserting estoppel believes the party to be estopped has such intent; (3) the party asserting estoppel must be ignorant of the relevant facts; and (4) the party asserting estoppel must rely on the other party's conduct to his or her detriment.

*Id.* (citing *Dove v. Delgado*, 808 P.2d 1270, 1275 (Colo.1991)).  Wrongful conduct which may toll the statute of limitations includes: (1) misleading a plaintiff in such a way that the plaintiff does not timely file the claim, *i.e.*, through fraudulent concealment of evidence of the underlying wrong, or failing to make a statutorily required disclosure; or (2) engaging in actions which actually prevent a timely filing, *i.e.*, failing to provide the plaintiff with a document needed to assert the claim, or physically harming the plaintiff, rendering him incapable of asserting claims. *See Samples–Ehrlich v. Simon*, 876 P.2d 108, 111 (Colo. App. 1994); *Dean Witter Reynolds, Inc.*, 911 P.2d at 1096 (citing cases and examples).  Once the statute of limitations has been raised as a defense, the burden is upon the plaintiff to establish the defendant's actions prevented him or her from filing a timely claim.  *Samples-Erlich*, 876 P.2d at 110.

Plaintiff argues Defendant Americana knew the relevant facts, and that Defendant Americana intended deceive and delay him, by continuing settlement negotiations, from bringing his claims.  (Resp. Mot. Dismiss at 13–14.)  However, Plaintiff does not argue that he was ignorant of the relevant facts or of the relevant limitations period; he does not argue that Defendant Americana fraudulently concealed evidence of the underlying wrong; and he does not

argue that he was not in possession of documents that were necessary to assert his claims.  In fact, Plaintiff concedes he knew of the underlying wrong, yet chose to file this action until the defendant failed to comply with the terms of the Third Settlement Agreement.  (*See id.* at 14.) The court finds Plaintiff has failed to meet his burden of establishing that the defendant's actions prevented him from filing his claims in a timely manner.

Moreover, "[t]he Colorado Supreme Court has yet to find a case that qualifies as an 'extraordinary circumstance' that would justify tolling." *Braxton v. Zavaras*, 614 F.3d 1156, 1160 (10th Cir. 2010).  Though Plaintiff argues that "policy concerns support that this is a case where this Court should equitably toll the statute of limitations" (Resp. Mot. Dismiss at 15), the court does not find any extraordinary policy concern that justifies tolling in this matter.  As such, Plaintiff's Tenth and Eleventh Claims for Relief properly are dismissed.

### ii.        *Fraud Claim under Colo. Rev. Stat. § 11-51-501*

The statute of limitations for fraud claims brought by persons suing under Colo. Rev. Stat. § 11-51-501 is "three years after the discovery of the facts giving rise to a cause of action . . . or after such discovery should have been made by the exercise of reasonable diligence and in no event more than five years after the purchase or sale. . . ."  Colo. Rev. Stat. § 11-51-604(8).

As explained above, Plaintiff alleges he discovered the facts constituting any purported violation by at least April 2011 (Compl., ¶¶ 60–63), and he filed his Complaint on July 2, 2013. Therefore, because Plaintiff filed his Complaint within the three-year statute of limitations for his fraud claim brought under the CSA, Defendant Americana's motion to dismiss Plaintiff's Twelfth Claim for Relief as barred by the statute of limitations properly is denied.

### b.      *Plaintiff Adequately Pleads that the IDCA is a Security*

Defendant Americana contends that the Complaint fails to adequately plead a plausible

claim that the IDCA is a "security" subject to federal and state securities laws.  (Mot. Dismiss at

8–9.)  Defendant Americana argues that on its face, the IDCA disclaims being a security and that

the IDCA is "simply a forward-looking development cooperation agreement governing how the

parties would invest in the future," as the IDCA established a SPVI for future investment.  (*Id.*

[citing Compl., Ex. A at 8].)

A "security" includes an "investment contract."  Colo. Rev. Stat. § 11-51-201(17); *Feigin*

*v. Digital Interactive Associates, Inc.*, 987 P.2d 876, 881 (Colo.App.1999).  Whether a particular

transaction involves a security depends on the substantive economic realities underlying the

transaction, not on the name or the form of the instrument.  *Joseph v. Viatica Mgmt., LLC*, 55

P.3d 264, 266 (Colo. App. 2002).  "[A]n investment contract . . . [is] [(1)] a contract, transaction

or scheme whereby a person invests his money [(2)] in a common enterprise and [(3)] is led to

expect profits solely from the efforts of the promoter or a third party."  *S.E.C. v. W.J. Howey Co.*,

328 U.S. 293, 298–99 (1946).  In determining whether an investment contract exists, Colorado

courts apply this three-part *Howey* test.  *Lowery v. Ford Hill Inv. Co.*, 556 P.2d 1201, 1205

(1976).

Here, it is clear from the contents of the IDCA that Plaintiff invested $1 Million dollars

in the IDCA, a contract creating a common enterprise , and he had the expectation that through

the work of Americana, he would receive profits.  (Compl., ¶¶ 32, 33, 107; Ex. A.)  The court

finds the IDCA is an investment contract and a security.  Thus, Defendant Americana's motion

to dismiss Plaintiff's Twefth Claim on this basis fails.

### c.        *Offer and Acceptance to Sell in Colorado*

Defendant Americana argues that because Plaintiff resides in Malaysia, and because an

offer to sell in this case was directed to a "person not located in this state," Plaintiff has no

standing to pursue either of its CSA claims asserted under Colo. Rev. Stat. §§ 11-51-301 and

501.  (Mot. to Dismiss at 12.)

Indeed, Colo. Rev. Stat. § 11-51-102(7) provides that Colo. Rev. Stat. § 11-51-301

"do[es] not apply to any person with respect to a sale or offer to sell where the sale or offer to

sell is directed to another person not located in this state."  Thus, even if Plaintiff's claim

asserted under § 11-51-301 were not barred by the statute of limitations, it would be subject to

dismissal under § 11-51-102(7).

Citing paragraph 174 of Plaintiff's Complaint, Defendant Americana states that "Claims

11 and 12 are both based on [Colo. Rev. Stat.] § 11-51-301 and/or § 11-51-604."  (Reply Mot.

Dismiss at 8.)  Paragraph 174 is the introductory paragraph for Plaintiff's Twelfth Claim, in

which Plaintiff merely "re-alleges each and every allegation contained in the preceding

paragraphs." (Compl., ¶ 174.)  It is clear to this court that Plaintiff intends to assert two separate

claims—the Eleventh Claim asserted under § 11-51-301 and the Twelfth Claim asserted under §

11-51-501.  Section 11-51-102(7)  does not apply to claims asserted under § 11-51-501.

Rather, Colo. Rev. Stat. § 11-51-102(1) provides that § 11-51-501 "appl[ies] to persons

who sell or offer to sell when an offer to sell is made in this state or when an offer to purchase is

made and accepted in this state."  The statute also provides that "an offer to sell or to purchase is made in this state, whether or not either party is then present in this state, when the offer originates from this state," and "acceptance is communicated to the offeror in this state, whether or not either party is then present in this state, when the offeree directs it to the offeror in this state reasonably believing the offeror is to be in this state and it is received at the place to which it is directed or, in the case of a mailed acceptance, at any post office in this state."  Colo. Rev. Stat. § 11-51-102(3) & 4.

The IDCA states that Americana was located at 2100 West Littleton Boulevard, Suite 300, Littleton, CO 80120 at the time of the IDCA's execution.  (Compl., Ex. A.)  Thus, the Complaint establishes facts sufficient to demonstrate that Defendant Americana made the offer from Colorado and that Plaintiff directed the acceptance to Defendant Americana in Colorado, reasonably believing Defendant Americana to be in Colorado.  Colo. Rev. Stat. § 11-51-102(3) & 4.

Defendant Americana's motion to dismiss Plaintiff's Twelfth Claim on this basis properly is denied.

### d.   *Pleading Fraud Claims with Particularity*

Defendant Americana moves for dismissal of Plaintiff's statutory fraud claims on the basis that Plaintiff fails to plead fraud with particularity.  Specifically, Defendant Americana moves to dismiss Plaintiff's Tenth Claim (*see* Mot. Dismiss at 9–11), and later moves to dismiss Plaintiff's Twelfth Claim on the same basis (*see id.* at 12).

However, because this court recommends dismissal of Plaintiff's Tenth Claim as barred by the applicable statute of limitations, *see supra*, it need not address Defendant Americana's argument that the Tenth Claim should be dismissed for lack of particularity.  Moreover, Defendant Americana has entirely failed specifically to address why or how the Twelfth Claim is deficient.  (*See* Mot. Dismiss at 9–11.)  In fact, references made by Defendant Americana as to any deficiencies regarding any fraud claim are confined only to the paragraphs contained in Plaintiff's Seventh and Tenth Claims for relief.[6]  (*See id.*)  It is not the responsibility of the court to parse through the Complaint and make Defendant's arguments for it on a motion to dismiss, but rather the Defendant must direct the court to the portions of the Complaint it believes are deficient.  Thus, to the extent Defendant Americana seeks to dismiss Plaintiff's Twelfth Claim for failure to plead the fraud claim with particularity, the motion properly is denied.

### 3.    *Unjust Enrichment Claim*

Defendant Americana argues that Plaintiff's Ninth Claim for unjust enrichment should be dismissed because the Third Settlement Agreement, the IDCA, and the Escrow Agreement are pre-existing contracts covering the same subject matter as the claim for unjust enrichment.  (Mot. Dismiss at 13.)

The Tenth Circuit has held that an unjust enrichment claim "is a remedy designed for circumstances in which other remedies are unavailable."  *West Ridge Group, LLC v. First Trust Co. of Onaga*, No. 09-1358, 2011 WL 635567, at *7 (10th Cir. Feb. 23, 2011).  "As such, it is

---

[6]The Seventh Claim is addressed *infra*.

not available as a mere alternative legal theory when the subject is covered by an express

contract." *Id.*  However, the fact that Plaintiff may not be able to recover on both its breach of

contract claim and its unjust enrichment claim does not preclude it from pleading multiple

theories of recovery. *Hemman Mgmt. Servs. v. Mediacell, Inc.*, 176 P.3d 856, 860 (Colo. App.

2007); Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense

alternatively or hypothetically. . . .  If a party makes alternative statements, the pleading is

sufficient if any one of them is sufficient.").

As such, Defendant Americana's motion to dismiss Plaintiff's unjust enrichment claim

properly is denied.

### 4.      *Common Law Fraud Claim*

Finally, Defendant Americana moves for dismissal of Plaintiff's common law fraud claim

(Seventh Claim) on the basis that Plaintiff fails to plead fraud with particularity.

To establish fraud under Colorado law, Plaintiff  must establish five elements: (1) that the

defendant made a false representation of a material fact; (2) that the one making the

representation knew it was false; (3) that the person to whom the representation was made was

ignorant of the falsity; (4) that the representation was made with the intention that it be acted

upon; and (5) that reliance on the representation resulted in damage to the plaintiff.  *Coors v.*

*Sec. Life of Denver Ins. Co.*, 112 P.3d 59, 66 (Colo. 2005).  Common law fraud claims must be

pleaded with particularity in federal court.  *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or

mistake, a party must state with particularity the circumstances constituting fraud or mistake.

Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.");

19

*Barrett v. Tallon*, 30 F.3d 1296, 1300 (10th Cir. 1994) (holding that Rule 9(b) applies to

common law fraud claims brought in federal court).

With regard to the Seventh Claim, Defendant Americana argues Plaintiff has failed to

plead with particularity the five falsities alleged in paragraph 146, which states:

> 146.   Under the IDCA and otherwise, Americana and its agents made the
> following representations to induce Mr. Chun to make an investment with
> Americana:
> a) Mr. Chun would receive roughly $36,000,000, before taxes and costs, on a
> monthly basis in 10-month "investment cycles" or "portfolios";
> b) that the SPIV would invest in "risk free or maximally up to level 2 in risk
> profiling";
> c) that Americana would abide by all local government authorities and
> regulations;
> d) that Americana guaranteed the protection of the Mr. Chun's Initial Investment;
> and
> e) that Americana would return Mr. Chun's Initial Investment.

(Mot. at 10 [citing Compl., ¶ 146.)  Defendant Americana argues the "vagueness as to the source

and falsity of the purported misrepresentations is insufficient, as a matter of law, as such

nebulous assertions could easily encompass innocent conduct and do not give Americana

sufficient notice of the claims against which it must defend itself."  (*Id.*)

In Plaintiff's response, he lists various "representations" that he attempted to assert in his

Complaint, and which he now argues can be "inferred" to become misrepresentations.  (*See*

Resp. Mot. Dismiss at 5–6.)  However, the court agrees with the defendant that the

representations may support an inference of a breach of contract, but they do not support an

inference of a knowing falsity at the time made, or any other requirements for a fraudulent

misrepresentation.  Moreover, none of these misrepresentations are pleaded with the particularity

required under Rules 8(a)(2) and 9(b).  None of them identifies the requisite "time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof."  *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000). Moreover, "to eschew the danger of inferring fraud based on hindsight, plaintiffs' allegations 'must set forth, as part of the circumstances constituting fraud, an explanation as to why the disputed statement was untrue or misleading when made.' " *Wolfe v. Aspenbio Pharma, Inc.*, No. 11–cv–00165–REB–KMT, 2012 WL 4040344, at *5 (D. Colo. Sept. 13, 2012) (quoting *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1124 (10th Cir. 1997)).

Because Plaintiff has failed to meet the pleading requirements for a common law fraud claim, his Seventh Claim properly is dismissed.

**B.      *Motion for Summary Judgment***

Plaintiff moves for partial summary judgment to enforce only the Second Settlement Agreement.  (Br. at 1.)

### *1.      Undisputed Material Facts*

1.      Defendant Americana admits that on February 4, 2011, Plaintiff and Defendant Americana entered into the IDCA.  (*See* Mot. Dismiss [Ex. D] at 2; Def. Americana Resp. to Req. for Admis. [Ex. E], No. 4.)

2.      Defendant Americana admits that, through its directors, employees, and other agents it "induced Plaintiff Chun Chee Seng to make his Initial Investment of $1,000,000 pursuant to the IDCA."  (Ex. E, No. 4.)

3.      Defendant Americana admits that it has "not paid any profit or other distributions to Plaintiff Chun Chee Seng following the signing of the IDCA."  (Ex. E, No. 9.)

4.      Defendant Americana admits that it has "not remitted to Chun Chee Seng any portion of his Initial Investment of $1,000,000."  (Ex. E, No. 10.)

5.      Defendant Americana admits that it "entered into two different Settlement Agreements with Plaintiff Chun Chee Seng, in April 2012 and January 2013."  (Ex. E, No. 12.)

6.      The Second Settlement Agreement was entered into by Defendant Americana and Plaintiff, executed by Plaintiff on April 2, 2012, and by Defendant Americana on April 10, 2012. (Pl.'s Compl., Ex. W [Ex. B] at 5-6; See Ex. E, No. 12, 13; Ex. D at  3.)

7.      The Second Settlement Agreement is a true and accurate copy of this agreement. (Ex. B.)

8.      The Second Settlement Agreement states:

1. AMER shall immediately upon the Parties' execution of this Settlement Agreement, cause its counsel, The West Law Group, P.C. ("Counsel for Amer"), to do the following:
(a) Issue a wire in the amount of ($1,000,000.00) One Million U.S. Dollars as refunded investment sum to the account of Mr. Chun Chee Seng. . .

* * *

(b) Issue a wire transfer of an additional amount of ($5,000,000,000.00) [sic] Five Million U.S. Dollars as final Settlement Sum to the account of Mr. Chun Chee Seng at the account of HSBC Bank Malaysia Berhad using the above listed wiring coordinates.

(Ex. B at 1-2; Ex. A, ¶¶ 86-87.)

9.      The Second Settlement Agreement states:

The parties, by this Settlement Agreement, hereby settle any and all claims of any nature outstanding between them, at equity or in law, contract or tort of any

nature. All claims of any nature, known or unknown, extant or inchoate, separate
of this Settlement Agreement are hereby completely and fully released,
discharged and liquidated. Upon the payment called for under Paragraph 2 and the
discharge of all obligations and duties of both Parties hereof all outstanding
matters between the parties are deemed settled and resolved.

(Ex. B at 5.)

10.    The Second Settlement Agreement states: "In the event either party commences

any action in a court of law to enforce this Settlement Agreement or obtain damages for the

breach of this Settlement Agreement, the prevailing Party shall be entitled to an award of its

actual attorneys' fees and costs incurred in such action."  (Ex. B at 5.)

11.    The Second Settlement Agreement states: "This Settlement Agreement shall be

governed by and construed and enforced under the laws of the Commonwealth of Virginia."

(Ex. B at 4-5.)

12.    Defendant Americana admits that "no funds have been paid" by Defendant

Americana under the Second Settlement Agreement, but "denies the rest of the admission

regarding what is owed."  (Ex. E, No. 13.)

13.    Defendant West Law (counsel for Defendant Americana) admits that it "failed to

remit any portion of the $6,000,000 to Plaintiff Chun Chee Seng as required by the Second

Settlement Agreement."  (Def. West Law Group Resp. to Req. for Admis. [Ex. F], No. 6.)

14.     The Third Settlement Agreement was executed and entered into on January 31,

2013, by Defendant Americana and on February 1, 2013, by Plaintiff.  (*See*, Ex. A, Ex. C at 7-8;

Ex. E, No. 12, 14; Ex. D at 3.)

15.     The Third Settlement Agreement required Defendant Americana to return Plaintiff's Initial Investment of $1,000,000 (the "Initial Investment") within eight days of execution.  (Ex. B, Ex. AC at 1-2; Ex. A ¶ 102.)

16.     The Third Settlement Agreement provided that it would be governed by, construed and enforced under Colorado law, and contained a forum selection clause of Colorado. (Ex. A, Ex. C at 4-5; Ex. A ¶ 102.)

17.     The Third Settlement Agreement stated:

> Release of Defendant Americana: In consideration of the obligations of Defendant Americana in this Agreement, conditioned upon Chun's actual receipt of the Returned Investment, and subject to Paragraphs 22 and 23, Chun agrees to release Americana. . . from any and all claims. . . whatsoever relating to the IDCA. . . except for claims to enforce, or arising out of, this [Third Settlement] Agreement.

(Ex. A, Ex. AC at 6.)

18.     Defendant Americana admits that it "failed to remit any portion of the $1,000,000 Initial Investment owed to Plaintiff Chun Chee Seng pursuant to the Third Settlement Agreement."  (Ex. E, No. 14.)

### 2.     *Choice of Law*

The Second Settlement Agreement contains a choice of law provision that provides that it "shall be governed by and construed and enforced under the laws of the Commonwealth of Virginia."  (Br. at 5; Ex. B, ¶ 12.)  Plaintiff argues that the choice of law provision should be invalidated because there is no connection to the Commonwealth of Virginia in the parties' course of dealings.  (*Id*. at 6.)

To resolve this question, the court must apply Colorado's choice of law principles.  A federal court in a diversity case must apply the choice of law principles of the forum state. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941).  Colorado law resolves conflicts under the principles set forth in Restatement (Second) of Conflict of Laws §§ 6 and 188 (1971) ("Restatement").  *Dresser Industries, Inc. v. Sandvick*, 732 F.2d 783, 785 (10th Cir. 1984).  The Restatement provides that the law of the  state chosen by the parties will be applied unless the plaintiff can demonstrate that (a) the state chosen has no substantial relationship to the parties or the transaction, or there is no other reasonable basis for the parties' choice; or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.  RESTATEMENT (SECOND) OF CONFLICT OF LAWS, § 187(2) (1971).

Plaintiff argues that the parties to the Second Settlement agreement are Plaintiff, who is a Malaysian citizen, and Defendant Americana, which is domiciled in Colorado as a Colorado limited liability.  (Br. at 6.)  Plaintiff asserts that the Second Settlement Agreement was not negotiated or signed in the Commonwealth of Virginia, and the parties otherwise have no connection to the Commonwealth of Virginia.  (*Id.*)  Plaintiff surmises that the parties may have chosen for the Second Settlement Agreement to be governed under the laws of the Commonwealth of Virginia for the convenience of Defendant Americana's counsel, who presumably drafted the Second Settlement Agreement.  (*Id.*)

25

The court agrees with the plaintiff that the Commonwealth of Virginia has no substantial relationship to the parties or the Second Settlement Agreement, and there is no other reasonable basis for the parties' choice.  Thus, this court will apply Colorado law.

### 3. Breach of Contract

To state a claim for breach of contract under Colorado law, a plaintiff must sufficiently plead the following elements: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff.  *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992).

There is no dispute with respect to the any of the elements of the breach of contract claim. The parties entered into an enforceable Second Settlement Agreement and there is no allegation or evidence that Plaintiff failed to perform its obligations under that Second Settlement Agreement.  Moreover, it is undisputed that Defendant Americana materially breached the Second Settlement Agreement by failing to pay Plaintiff.  (Br., Ex. E, No. 13; Ex. B at 1.)  Finally, it is undisputed that Plaintiff has suffered damages.

The only issue that is in dispute is the amount of damages.  Plaintiff argues that, under the terms of the Second Settlement Agreement, Defendant Americana agreed to pay $6 Million. (Br. at 2; Ex. B at 1.)  However, in its "Responses to Requests for Admissions," Defendant Americana admits that it failed to pay Plaintiff, but "denies the rest of the admission regarding what is owed."  (Ex. E, No. 13.)  Nevertheless, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could

believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380; *Thomson*, 584 F.3d at 1312.  The mere existence of a scintilla of evidence will not avoid summary judgment; there must be sufficient evidence on which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986) (quoting *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)).  Here, Defendant Americana has provided no argument or evidence to contradict the plain terms of the Second Settlement Agreement and the amount it owes under the terms of the contract.  Similarly, the response to Plaintiff's request for admissions provides no explanation why Defendant Americana denies what is owed under the contract.  Defendant Americana cannot avoid summary judgment on this "scintilla of evidence," *Anderson*, 477 U.S. at 251, which is contradicted by the Second Settlement Agreement and the evidence provided by Plaintiff.

Thus, the court recommends finding that Plaintiff is entitled to summary judgment on his claim that Defendant Americana breached the Second Settlement Agreement and that Plaintiff is entitled to judgment against Defendant Americana for $6 Million Dollars.

**WHEREFORE**, for the foregoing reasons, this court respectfully

**RECOMMENDS** that "Defendant Americana Investments, LLC's Motion to Dismiss Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)" (Doc. No 16) be **GRANTED** in part and **DENIED** in part as follows:

1.      Defendant Americana's Motion to Dismiss Plaintiff's First Claim for Breach of Contract should be denied;

2.      Defendant Americana's Motion to Dismiss Plaintiff Tenth and Eleventh Claims (for violations of the SEA and CSA) should be granted as barred by the statutes of limitations;

3.      Defendant Americana's Motion to Dismiss Plaintiff's Twelfth Claim for Fraud under the CSA should be denied;

4.      Defendant Americana's Motion to Dismiss Plaintiff's Ninth Claim for Unjust Enrichment should be denied; and

5.      Defendant Americana's Motion to Dismiss Plaintiff's Seventh Claim for common law Fraud should be granted.

This court further

**RECOMMENDS** that "Plaintiff's Motion for Partial Summary Judgment Against Defendant Americana Investments, LLC" (Doc. No. 67) be **GRANTED** as to Plaintiff's First Claim for Breach of Contract as to the Second Settlement Agreement.

### ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop.*

28

*Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579–80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *One Parcel of Real Prop.*, 73 F.3d at 1059–60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review);  *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 31st day of July, 2014.

BY THE COURT:

_____
Kathleen M. Tafoya
United States Magistrate Judge

29